**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

CHARLES KEYS                                                              PLAINTIFF

v.                                                     CIVIL ACTION # 2:07cv372-KS-MTP

SAFEWAY INSURANCE COMPANY                                                 DEFENDANT


## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion for judgment on the pleadings [Doc. # 9] filed by Safeway Insurance Company.  Because Safeway Insurance Company has failed to show that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief, the motion for judgment on the pleadings should be **denied**.


## I. FACTUAL BACKGROUND

This case deals with an insurer's statutory duty to send notice when it cancels the automobile policy of its insured.  Instead of waiting until its insured missed a premium payment, the Defendant insurer sent notice of cancellation ten days before the premium was due, and then cancelled the policy within hours of the missed payment.  When the Plaintiff insured had a wreck less than ten days later, the Defendant insurer first denied but ultimately paid the claim.  The Plaintiff insured now seeks punitive and exemplary damages for the Defendant insurer's actions.

Charles Keys purchased an insurance policy from Safeway Insurance Company ("Safeway") on July 29, 2006. *See* Pl.'s Ex. B [Doc. # 1-2] (Dec. 27, 2007).  The policy provided both Charles Keys and his wife Greta Keys automobile liability coverage on three separate

1

vehicles.  The policy had a six month term, running from July 28, 2006, through January 28, 2007. *Id*.

On December 7, 2006, Safeway sent a "Premium Bill" to Keys, stating that $106.40 was then the "amount due" and that December 22, 2006, was the "due date" for the premium. *See* Pl.'s Ex. C. [Doc. # 1-4] (Dec. 27, 2007).  On December 11, 2006, having not yet received payment, Safeway sent a "Notice of Cancellation or Termination" to Keys.  This document stated:

> You are hereby notified that in accordance with the terms and conditions of your automobile policy, that your policy will be cancelled or terminated on the date and time indicated, for the reason described below:
>
> **Non-Payment of Premium**
> You are hereby notified pursuant to section 83-11-11 of the Mississippi Statutes to contact your agent for possible eligibility for insurance through the Mississippi Automobile Insurance Plan.

In the details section, the document stated that the cancellation date was December 22, 2006, and that the amount due was still $106.40.  It further stated that "a $5 late fee must be added to the amount due if payment is postmarked on or after the due date shown on the last bill issued." *Id*. Keys made no payment to Safeway prior to the December 22 due date.

On December 31, 2006, Keys was involved in an automobile accident.  Following the accident, Keys sought to pay his policy premium and reinstate his insurance so as to cover his loss.  He submitted a check to Safeway for $111.40 on January 2, 2007. *See* Pl.'s Ex. D [Doc. 1-5] (Dec. 27, 2007).  He then submitted a claim against the policy for the accident.

Safeway rejected both Keys's payment and his claim for coverage by letter dated January 4, 2007.  The letter indicated that Keys's policy had been "cancelled for non-payment of

premium on 12-22-06 at 12:01 am." *See* Pl.'s Ex. E [Doc. # 1-6] (Dec. 27, 2007).  After Keys

retained counsel, Safeway reversed its position and chose to pay Keys's claim, informing him by

letter dated March 30, 2007. *See* Pl.'s Ex. J [Doc. # 1-11] (Dec. 27, 2007).

  Keys subsequently brought suit against Safeway, alleging that Safeway "acted with gross

negligence, malice and reckless disregard for the rights of the Plaintiff when it cancelled the

subject policy in violation of Mississippi law and denied the claim submitted." *See* Pl.'s Compl.

¶ 28 [Doc. # 1] (Dec. 27, 2007).  Keys asks for punitive damages, exemplary damages, and

damages for emotional distress, mental anguish, and loss of enjoyment of life. *Id.* at ¶ 32.

  Safeway has now moved for a Rule 12(c) judgment on the pleadings.  It asserts that

Mississippi law only requires it to notify its insured ten days prior to cancellation, a duty it

undisputably met.  Safeway further argues that even if it was mistaken in providing notice, the

Plaintiff has failed to state any claim for which relief could be granted.

## II. STANDARD OF REVIEW

  Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but

within such time as not to delay the trial, any party may move for judgment on the pleadings."

*See* Fed. R. Civ. P. 12(c).  The motion is used "where the material facts are not in dispute and a

judgment on the merits can be rendered by looking to the substance of the pleadings and any

judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th

Cir. 1990) (per curiam) (citations omitted).   When ruling on a motion to dismiss pursuant to

Rule 12(c), the court may look to both the pleadings and "documents attached to the complaint

because these documents thereby become part of the pleadings." *See Great Plains Trust Co. v.*

*Morgan Stanley Dean Witter*, 313 F.3d 305, 313 (5th Cir. 2002) (citations omitted).

The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss. *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). The court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). As the Fifth Circuit has explained, "[t]he issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam). The district court should only grant a Rule 12(c) motion "when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.*

## III.   APPLICATION AND ANALYSIS

In this action, the Plaintiff asks for extraordinary relief in the form of punitive damages premised on a bad faith decision of its insurer to first deny and then delay paying claims. In order to determine whether a judgment on the pleadings in favor of the Defendant is proper, the Court must first determine if the Defendant's decision in applying the state's notice requirement was correct. If the insurer failed to abide by state law, the Court may then ask whether that failure merits the extraordinary relief requested.

**1.  Did Safeway comply with § 83-11-5?**

Mississippi Code § 83-11-5 sets forth the procedures by which an insurer may cancel a

policy for nonpayment of premiums:

> No notice of cancellation of a policy to which Section 83-11-3 applies shall be effective
> unless mailed or delivered by the insurer to the named insured and to any named creditor
> loss payee at least thirty (30) days prior to the effective date of cancellation; provided,
> however, that **where cancellation is for nonpayment of premium at least ten (10)
> days' notice of cancellation accompanied by the reason therefor shall be given.**
> Unless the reason accompanies or is included in the notice of cancellation, the notice of
> cancellation shall state or be accompanied by a statement that upon written request of the
> named insured, mailed or delivered to the insurer not less than fifteen (15) days prior to
> the effective date of cancellation, the insurer will specify the reason for such cancellation.

Miss. Code Ann. § 83-11-5 (emphasis added).

According to the terms of the statute, "to cancel an insurance policy based upon

nonpayment of premiums, an insurer must thus give at least ten (10) days notice of cancellation."

*Brown v. Progressive Gulf Ins. Co.*, 761 So. 2d 134, 136 (Miss. 2000).  In *Brown*, the state

Supreme Court upheld cancellation of an auto insurance policy pursuant to § 83-11-5. *Id.* at 137.

In that case, the insureds received a notice of cancellation more than ten days before the final

cancellation date "because [their] premium payment **had not been received**." *Id.* (emphasis

added).  The court upheld the insurer's right to use § 83-11-5, because the document notified the

insurer why cancellation was imminent, and did so more than ten days before the effective

cancellation date. *Id.*  Other reported cases uphold the same use of § 83-11-5 for notification after

the precondition for cancellation has occurred. *See Branch v. State Farm Fire & Cas. Co.*, 759

So. 2d 430, 432 (Miss. App. 2000) (notice sent prior to cancellation but after insurer learned that

their insured had violated the policy's application disclosures).

The instant case presents a unique and unreported use of the § 83-11-5 notice form.

Instead of waiting until the premium due date had come and passed, Safeway sent its § 83-11-5 notice of cancellation more than ten days before the premium was even due.  In its notice, Safeway informed its insured of its intent to cancel the policy if the premium was not received by midnight on the due date, with cancellation of coverage effective immediately.  In other words, Safeway sent a preemptive notice of cancellation, stating its intent to terminate the policy at the precise moment its insured became late on their payments.

The first question before the Court then is whether § 83-11-5 permits an insurer to use the notice of cancellation preemptively, instead of waiting until the event triggering cancellation has taken place.  In moving to dismiss pursuant to Rule 12(c), Safeway argues that § 83-11-5 offers no "grace period" for an insured, but merely requires that the insurer send the required notice at least ten days before the date of cancellation, whenever that may be.  Keys responds by arguing that § 83-11-5 creates a de facto "grace period" for insureds, in that it requires the conditions for cancellation to have occurred prior to the notice of cancellation being sent.

Based on the language of the statute, the Court determines that the Plaintiff's interpretation of § 83-11-5 is proper.  Although the notice provision of § 83-11-5 does not explicitly grant a "grace period," it necessarily creates one in that it requires an insurer to wait until the conditions for cancellation are ripe before sending notice and waiting the statutorily required ten days before termination.  Accepting Safeway's use of preemptive notification for cancellation defeats the underlying purpose of the notice provision–that is, to provide the insured notice and a ten-day window within which to cure their default or to seek substitute coverage.  If an insurer were permitted to use § 83-11-5 preemptively, nothing would prevent the insurer from simply notifying its insured upon purchase of the policy that failure to pay the premium on the

6

due date results in immediate termination.  Based on Safeway's reading of § 83-11-5, no other notice prior to cancellation would be required, and the insurer would not need to send anything more if its insured missed an agreed payment.

Reducing the notice requirements of § 83-11-5 to merely a provision or rider in the initial insurance agreement undermines the legislature's purpose in adopting them.  Therefore, to comply with the notice requirement of § 83-11-5, an insurer must wait to send notice of imminent cancellation after the event triggering the insurer's right to cancel has occurred.[1]  The insured can then use the ten days afforded by statute to either cure their default with their insurer or to seek a substitute insurer.  By sending notice preemptively and without any prior indication of default, Safeway violated the notice requirements of § 83-11-5 to the detriment of its insured.

**2.  Is Keys entitled to extraordinary relief for Safeway's actions?**

Even if Safeway's interpretation of its statutory duty was incorrect, that does not make it automatically liable for the punitive and exemplary damages requested by the Plaintiff. Mississippi law recognizes a claim of bad faith refusal of insurance coverage, and a

---

[1] Although no reported case has interpreted § 83-11-5 in this context, the Court finds some support in a recent case from the Mississippi Court of Appeals. *Traylor v. Colonial Ins. Co. of California*, 738 So. 2d 769, 770 (Miss. App. 1999).  In *Traylor*, an insurer cancelled a month-to-month automobile policy for failure to pay premiums on December 30, 1994.  The insurer immediately sent the required notice of cancellation pursuant to § 83-11-5.  In describing the insurer's actions, the Mississippi Appeals Court stated that "the [insureds] did not pay the premium for January 1995 during the **ten day grace period**; thus, their coverage expired and the policy became ineffective as of January 10, 1995." *Id.* (emphasis added).  It appears that the appeals court was approving notice of cancellation sent subsequent to the precondition for cancellation, and perhaps applying the ten days after notice from § 83-11-5 as an affirmative "grace period" within which cancellation cannot occur.  This Court's opinion is certainly consistent with the explicit holding of *Traylor*, and likely follows an assumption about state law that is implicit in that same opinion.

7

corresponding entitlement to punitive damages, if a plaintiff can prove that (1) there was no arguable or legitimate reason to deny coverage and (2) the insurer acted willfully, maliciously, or with gross and reckless disregard for the insured's rights. *Liberty Mutual Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003). If the insurer had an arguable reason to deny coverage, punitive damages are impermissible. *Pioneer Life Ins. Co. of Ill. v. Moss*, 513 So. 2d 927, 929 (Miss. 1987). The Mississippi Supreme Court has defined an "arguable reason" as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort." *Caldwell v. Alfa Ins. Co.*, 686 So. 2d 1092, 1096 (Miss. 1996).[2]

The award of punitive damages under Mississippi law requires a plaintiff to prove "by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65. Punitive damages are only recoverable after a breach of contract "where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." *Caldwell*, 686 So. 2d at 1095.

Because the instant motion is filed pursuant to Rule 12(c), no discovery has taken place and no facts surrounding Safeway's initial decision to deny benefits have been established. As such, this Court cannot conclusively say whether Safeway's actions give rise to any of the

---

[2] The Court previously defined an arguable reason as "one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts." *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So. 2d 833, 851 (Miss. 1985).

extraordinary relief requested by the Plaintiff, or that the Plaintiff cannot prove any set of facts that would entitle him to the relief requested.

## IV. CONCLUSION

If Safeway had properly complied with the notice requirements of § 83-11-5, then the Plaintiff would be unable, as a matter of law, to articulate any set of facts that would entitle him to relief. But because the insurer's actions were in violation of the statute, it remains possible that the Plaintiff might produce evidence in discovery that would create a genuine issue of material fact for his claims of bad faith against Safeway. The Plaintiff is entitled to use the discovery process to find and offer such evidence to support his claim for relief, and hence a judgment on the pleadings in favor of the Defendant is improper.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion for judgment on the pleadings [Doc. # 9] is **denied.**

SO ORDERED AND ADJUDGED on this, the 22nd day of April, 2008.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE