IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

CHARLES KEYS                                                            PLAINTIFF

VS.                                                 CIVIL ACTION NO. 2:07cv372KS-MTP

SAFEWAY INSURANCE COMPANY                                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the Motion for Summary Judgment [Doc. #59] (June 15, 2009) filed by Defendant Safeway Insurance Company. The Motion is opposed by Plaintiff Charles Keys. The court, having reviewed the motion, the response, the pleadings and exhibits on file, the briefs of counsel and being otherwise fully advised in the premises finds that the case should be stayed pending exhaustion of administrative remedies.

## I. BACKGROUND

This Court summarized the facts of the case in its Order dated April 22, 2008, [Doc. #15] as follows. Charles Keys purchased an insurance policy from Safeway Insurance Company ("Safeway") on July 29, 2006. *See* Pl.'s Ex. B [Doc. # 1-2] (Dec. 27, 2007). The policy provided both Charles Keys and his wife Greta Keys automobile liability coverage on three separate vehicles. The policy had a six month term, running from July 28, 2006, through January 28, 2007. *Id*.

On December 7, 2006, Safeway sent a "Premium Bill" to Keys, stating that $106.40 was then the "amount due" and that December 22, 2006, was the "due date" for the premium. *See*

1

Pl.'s Ex. C. [Doc. # 1-4] (Dec. 27, 2007). On December 11, 2006, having not yet received payment, Safeway sent a "Notice of Cancellation or Termination" to Keys. This document stated:

> You are hereby notified that in accordance with the terms and conditions of your automobile policy, that your policy will be cancelled or terminated on the date and time indicated, for the reason described below:
>
> **Non-Payment of Premium**
> You are hereby notified pursuant to section 83-11-11 of the Mississippi Statutes to contact your agent for possible eligibility for insurance through the Mississippi Automobile Insurance Plan.

In the details section, the document stated that the cancellation date was December 22, 2006, and that the amount due was still $106.40. It further stated that "a $5 late fee must be added to the amount due if payment is postmarked on or after the due date shown on the last bill issued." *Id.* Keys made no payment to Safeway prior to the December 22 due date.

On December 31, 2006, Keys was involved in an automobile accident. Following the accident, Keys sought to pay his policy premium and reinstate his insurance so as to cover his loss. He submitted a check to Safeway for $111.40 on January 2, 2007. *See* Pl.'s Ex. D [Doc. 1-5] (Dec. 27, 2007). He then submitted a claim against the policy for the accident.

Safeway rejected both Keys's payment and his claim for coverage by letter dated January 4, 2007. The letter indicated that Keys's policy had been "cancelled for non-payment of premium on 12-22-06 at 12:01 am." *See* Pl.'s Ex. E [Doc. # 1-6] (Dec. 27, 2007). After Keys retained counsel, Safeway reversed its position and chose to pay Keys's claim, informing him by letter dated March 30, 2007. *See* Pl.'s Ex. J [Doc. # 1-11] (Dec. 27, 2007).

Keys subsequently brought suit against Safeway, alleging that Safeway "acted with gross negligence, malice and reckless disregard for the rights of the Plaintiff when it cancelled the

2

subject policy in violation of Mississippi law and denied the claim submitted." *See* Pl.'s Compl. ¶ 28 [Doc. # 1] (Dec. 27, 2007). Keys asks for punitive damages, exemplary damages, and damages for emotional distress, mental anguish, and loss of enjoyment of life. *Id.* at ¶ 32.

Safeway moved for a Rule 12(c) judgment on the pleadings [Doc. # 9] (March 25, 2008). This Court denied the motion, holding that the insurer's notice of cancellation sent before the premium due date violated the statute and the plaintiff was entitled to discover evidence to support his claim of bad faith. [Doc. # 15] (April 22, 2008). On June 15, 2009, Safeway filed a Motion for Summary Judgment [Doc. # 59]. In response this Court ordered additional briefing, specifically asking the plaintiff to "point to the allegations in the complaint, see [Doc. # 1] (December 27, 2007), the statute(s) or caselaw, and the evidence in the record that support [a claim of bad faith]." [Doc. # 64] (August 11, 2009). Both parties presented additional briefing to this Court. [Docs. #68, 70]. Additionally, Plaintiff filed its Motion for Leave to Amend Complaint [Doc. #65] and Brief in Support [Doc. #66]. Defendant opposed this motion. Def.'s Resp. to Pl.'s Mot. for Leave to Amend Compl. [Doc. #67]. Substantial discovery has been done by both parties.

## II. LAW AND APPLICATION

Plaintiff is seeking extra-contractual damages for wrongful denial of claims as well as punitive damages for bad faith denial of benefits due under his auto insurance policy. In this diversity suit, the substantive law of Mississippi applies. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Mississippi law recognizes a claim of bad faith refusal of insurance coverage, and a corresponding entitlement to punitive damages, if a plaintiff can prove that (1) there was no arguable or legitimate reason to deny coverage and (2) the

3

insurer acted willfully, maliciously, or with gross and reckless disregard for the insured's rights. *See State Farm Mut. Auto. Ins. Co. v. Grimes,* 722 So.2d 637, 641 (Miss. 1998). If the insurer had an arguable reason to deny coverage, punitive damages are impermissible. *See Pioneer Life Ins. Co. of Ill. v. Moss*, 513 So. 2d 927, 929 (Miss. 1987).

In support of his bad faith claims, Keys claims that notice of cancellation was improper under Miss. Code. § 83-11-5 which states that "where cancellation is for nonpayment of premium at least ten (10) days' notice of cancellation accompanied by the reason therefor shall be given." Keys payment was due on December 22, 2006. Safeway preemptively mailed its notice of cancellation on December 11, 2006, advising Keys that the policy would be cancelled for nonpayment on December 22, 2006. Keys argues that the statute was intended to provide a ten day "grace period" after the nonpayment occurs, and this court agreed. *See Keys v. Safeway*, 556 F.Supp.2d 586 (S.D. Miss. 2008).

Keys argues that "[t]he invalid preemptive cancellation notice is merely a cog in the bad faith wheel." Pl.'s Resp. in Opp. to Def.'s Mot. for Summ. J. at 1 [Doc. #61] (June 29, 2009). Safeway "created a window of opportunity to deny Keys['s] valid claim after the due date and prior to the late payment of his insurance premium plus late fee." *Id.* at 3. In other words, Keys would "accept late payments from Keys without an interruption in coverage when no claim is filed, and refuse the late payment when a claim is filed after the due date and before the late payment is tendered." *Id*. at 6. Keys disputes that nonpayment was a legitimate reason for cancellation because his Transaction History demonstrated that he had $99.00 of equity in his account on the date of cancellation. Pl.'s Supp. Br. in Opp. to Def.'s Mot. for Summ. J. at 5 [Doc. # 68](August 24, 2009). Keys also notes that the Transaction History does not reflect

4

cancellation and reinstatement of his policy for the five previous occasions when he presented late payments in 2006. *Id.* at 3. In sum, Keys is contending that the true reason why Safeway cancelled his policy is not nonpayment but because he filed a loss claim.

Safeway argues that this Court does not have jurisdiction over this dispute because Keys did not exhaust the exclusive administrative remedies provided for by Mississippi law. Mississippi law provides that:

> A named insured who wishes to contest the reason or reasons for a cancellation of a policy which has been in effect for sixty (60) days or more or failure by insurer to give proper notice of nonrenewal as provided hereunder shall, not less than seven (7) working days from the date of receipt of notice of cancellation or receipt of notice of nonrenewal, mail or deliver to the Commissioner of Insurance a written request for a hearing, which request shall state clearly the basis for the appeal and shall be accompanied by a filing fee of Fifteen Dollars ($15.00).
>
> A cancellation or nonrenewal which is subject to the provisions of this article shall be deemed effective unless the Commissioner of Insurance determines otherwise in accordance with the provisions of this article.

MISS. CODE ANN. § 83-11-17 (1999). The article then provides provisions outlining the administrative procedure for conducting the hearing, MISS. CODE ANN. § 83-11-19, and the procedure for appealing the decision of the Insurance Commissioner, MISS. CODE ANN. § 83-11-21.

"Mississippi has followed the great weight of authorities requiring persons to exhaust their administrative remedies before resorting to court." *Davis v. Barr*, 157 So.2d 505, 508 (Miss. 1963). "Unless there is a clear indication of a contrary legislative intent, if the legislature provides a remedy before an administrative agency which meets the demands of due process of law and does not invade the constitutional jurisdiction of a court, a court may be deemed to have no jurisdiction in the premises." *Id.* at 510 (*citing* 2 Am. Jur.2d, Administrative Law, § 779, p.

5

679). Administrative remedies do not need to be exhausted if the remedies are inadequate or if appeal to the administrative agency is "futile." *Miss. Dept. of Environmental Quality v. Weems*, 653 So.2d 266 (Miss. 1995) (*quoting* Davis, ADMINISTRATIVE LAW TREATISE, 2d, Vol. 4, § 26:5 p. 432 (1983).

> Pulling away from requirement of exhaustion are combinations of such factors as irreparable injury to a party from pursuing the administrative remedy, clear absence of agency jurisdiction, clear illegality of the agency's position, a dispositive question of law peculiarly within judicial competence, the futility of exhaustion, and expense and awkwardness of the administrative proceeding as compared with inexpensive and efficient judicial disposition of the controversy.
>
> Pulling toward requirement of exhaustion are combinations of such factors as need for factual development, importance of reflecting agency's expertise or policy preferences in the final result, probability that the agency will satisfactorily resolve the controversy without judicial review, protection of agency processes from impairment by avoidable interruption, conservation of judicial energy by avoiding piecemeal or interlocutory review, and providing the agency opportunity to correct its own errors.

*Id.* at 278 (*quoting* Davis, § 26:1, at 413-14).

In *Walls v. Franklin Corp.*, the Mississippi Supreme Court ruled that a claim against a workers compensation carrier for bad faith refusal to pay expenses could not be maintained without a determination by the commission that the services demanded were reasonable and necessary. 797 So.2d 973, 977 (Miss. 2001); *see also Whitehead v. Zurich American Ins. Co.*, 348 F.3d 478 (5th Cir. 2003) (requiring exhaustion of administrative remedies before intentional tort claim can be brought against carrier).

**A. Keys's claims that Safeway's ultimate decision to cancel his policy was based on his attempt to file a complaint and not on his nonpayment of premium is a dispute as to Safeway's reasons for cancelling the policy, and must therefore be resolved by the**

## Commissioner of Insurance.

Section 83-11-17 requires an administrative hearing "to contest the reason or reasons for a cancellation of a policy which has been in effect for sixty (60) days or more." Thus, any claim of bad faith, which by its terms requires a showing of "no arguable reason" to deny payment of the claim, would require exhaustion of administrative remedies, regardless of whether the insured is claiming the insurer had a reason besides those authorized by Miss. Code § 83-11-3 or no reason at all.[1] Therefore a claim that Safeway violated § 83-11-3 by basing its cancellation on the filing of a claim and not on nonpayment of premium must be brought before the Commissioner of Insurance under § 83-11-17.

Keys argues that the administrative hearing would be meaningless because Safeway has already paid the claim. Pl's Resp. in Opp. to Def's Mot. for Summ. J at 1 [Doc. # 61]. Keys contends that Safeway's eventual payment of the claim is an admission that Safeway's cancellation was wrongful and thus, administrative resolution was a moot issue. *Id.* However, Safeway did not pay the claim until March 30, 2007, about three months after the cancellation of the policy, during which time Keys could have sought an administrative appeal. Safeway contends that they paid the claim in "a good faith effort to resolve the dispute." Def.'s Mot. for Summ. J. at 10 [Doc. #59]. Additionally, the Mississippi Supreme Court has held that "[it is not necessarily] true, that because an insurance company pays a claim prior to being sued, it admits it owed it, and was therefore unjustified in not paying the claim to begin with." *Blue Cross &*

---

[1] Miss. Code Ann. § 83-11-3 allows cancellation only for nonpayment of premium, suspension of driver's license or motor vehicle registration. and failure to maintain membership in an organization when the policy was issued based on that membership. MISS CODE ANN. § 83-11-3(1)(a-c)(1972).

*Blue Shield of Mississippi, Inc. v. Campbell*, 466 So.2d 833, 841 n.5 (Miss. 1984). Therefore, Safeway's decision to pay Keys's claim is not determinative as to whether the cancellation was wrongful or invalid.

Further, while the Insurance Commissioner would not be able to resolve the bad faith claims brought by Keys, he would be able to make a determination whether the cancellation was effective. In its summary judgement motion, Safeway relies on the opinion of former Insurance Commissioner George Dale that the cancellation was not contrary to Mississippi law. George Dale Aff., Ex. H [Doc. #59-2]. Requiring administrative appeal would result in a factual determination by the current insurance commissioner instead of speculation by a former commissioner. As clearly stated in § 83-11-17, the presumption is that a cancellation was effective unless the Insurance Commissioner determines otherwise.

Finally, setting an administrative hearing with the Insurance Commissioner and getting his determination as to the effectiveness of the cancellation will be speedy and inexpensive. Section 83-11-19 requires that the commissioner call the hearing within two days of receipt of a hearing request, and requires the commissioner issue his written findings within two days of the hearing. MISS. CODE. ANN. § 83-11-19 (1999). The fee for the hearing is $15.00. *Id.* Therefore, seeking the commissioner's expertise and policy preferences will not be a significant burden on the parties. Therefore, we find that the parties must exhaust the administrative remedies provided by statute.

**B. Keys's claim that Safeway's preemptive notice of cancellation was ineffective to cancel the policy is contrary to § 83-11-17's presumption of effective cancellation in the absence of**

**the Insurance Commissioner's determination otherwise.**

Whether the procedures followed in issuance of a notice of cancellation is within the jurisdiction of this Court is a more difficult matter. The first sentence of § 83-11-17 expressly outlines two circumstances where an insured should present their contest to the Insurance Commissioner within seven days of receipt of notice of cancellation or nonrenewal: 1) when the insured in contesting the **reasons for cancellation**, or 2) when the insured is contesting whether the insurer provided **proper notice of nonrenewal**. Throughout Article 1, "Cancellation or Nonrenewal of Policy," the requirements for nonrenewals and cancellations are separately considered. The plain language in this first sentence does not expressly require a hearing either for the reasons for nonrenewal or to contest whether the insurer provided proper notice of cancellation, which is at issue in this case. However, the second sentence of § 83-11-17 creates a presumption that a "cancellation or nonrenewal which is subject to the provisions of this article shall be deemed effective unless the Commissioner of Insurance determines otherwise in accordance with the provisions of this article." MISS. CODE ANN. § 83-11-17. Under the plain language of this sentence, an insured would have to appeal to the administrative agency if they had any reason to believe his or her cancellation was ineffective, including, necessarily, that the cancellation was ineffective because of improper notice. However, the seven day period from the time of receipt of notice of cancellation of nonrenewal during which time the insured must request a hearing would not apply.

This interpretation of the statute is supported by the facts and procedural posture of the Mississippi Supreme Court case, *State Farm Insurance Company v. Gay.* 526 So. 2d 534 (Miss. 1988). In this case, Gay had an auto insurance policy with State Farm. *Id.* at 534. On October 6,

9

1983, State Farm mailed Gay a notice of cancellation for nonpayment of premium, effective October 20, 1983. *Id.* at 534-35. On October 27, an accident occurred, and a claim was filed a few days later. *Id*. at 535. On November 2, 1983, State Farm denied the claim because the policy had been cancelled. *Id.* Gay then filed an appeal with the insurance commissioner and a hearing was held on May 1, 1984. *Id.* Gay argued that State Farm did not provide adequate notice of cancellation because although it was mailed to his last known address, he claims he never got actual notice because he never received it. *Id.* On May 3, 1984, the agency found in favor of Gay, and on February 14, 1986, the chancellor upheld the ruling on appeal, but the Mississippi Supreme Court reversed, finding that proof of mailing satisfies the notice requirement. *Id.* at 535, 538.

The *Gay* case is relevant to the case at bar for several reasons. First, it demonstrates that the Insurance Commissioner does take appeals challenging whether notices of cancellation were proper, not just those appeals involving notices of nonrenewals. Thus, the second sentence likely expands the Insurance Commission's jurisdiction to all issues arising under the Article involving cancellation and nonrenewal of auto insurance policies. Second, it demonstrates that the seven day window from the time notice is received does not apply to all appeals of cancellation or nonrenewal. Although the case does not say exactly when the request for hearing was made, it was necessarily more than seven days after the notice of cancellation. Of course, Gay claims to have not received a notice of cancellation at all, so it is possible that the seven day clock never started ticking. This Court is of the opinion, however, that neither Gay's claim or Keys's claim of improper notice of cancellation should be subject to this seven day time period under the plain language of § 83-11-17 because the appeal is properly taken under the second

10

sentence of § 83-11-17 and not the first. Further, the Court finds that strictly limiting an insurer's right to appeal improper notice of cancellation of his policy to a time frame based on the receipt of that allegedly improper notice makes little sense and provides insufficient protection. This is so particularly since the statute holds that "[p]roof of mailing of notice of cancellation . . . shall be sufficient proof of notice." MISS. CODE ANN. § 83-11-9. Therefore, the Court finds that Keys should not be foreclosed from seeking an administrative appeal of the effectiveness of preemptive notices of cancellation.

The Court does acknowledge the utility of the seven day window to appeal the reasons for cancellation given in a notice. When § 83-11-17 is read in conjunction with § 83-11-19, which sets strict timelines for the commissioner to set a hearing (within two days of receipt of request), to hold a hearing (within seven days of notice of hearing to the party), and render a written decision (within two days of the hearing), the legislative intent seems clear. Certainly the legislature wanted to minimize the period of uncertainty for the insurers and the insured alike. Also, the insured's rights are less likely to be harmed by a seven day window to appeal improper notice of nonrenewal as opposed to cancellation. In the case of nonrenewal, the insured does have at least some notice of a possible lapse in coverage by virtue of his policy's expiration date.

With that being said, the statutory language involving the seven day window to appeal is less than clear. Read literally, the statute requires the insured to mail his request for a hearing "*not less than* seven working days from the date of receipt." MISS. CODE ANN. § 83-11-17 (emphasis added). Does this mean that the insured must *wait* seven days before requesting a hearing? To require a request *within* the seven days, the statute may have been more properly

11

worded: "A named insured . . . shall, not *more* than seven days from date of receipt . . . ."[2]

This discussion is far from purely academic, but will determine whether Keys has missed a deadline to seek administrative review of whether the reasons for cancellation was valid under the statute. Regardless, Keys should not be time-barred from presenting his contentions to the Insurance Commission that the preemptive notice used by Safeway is improper notice of cancellation.

### C. Motion to Stay

"A district court has the inherent power to stay its proceedings." *Hood ex. rel Mississippi v. Microsoft Corp.*, 428 F.Supp.2d 537, 541 (S.D. Miss. 2006). "This power to stay is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Id.* (*quoting Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Petrus v. Bowen*, 833 F.2d 581 (5th Cir. 1987).

Generally, this Court will dismiss a complaint without prejudice upon finding that administrative remedies have not been exhausted. However, this case is different from the normal failure to exhaust case because Keys may have had a legitimate reason to think that Safeway's payment of the loss claim mooted the requirement to seek administrative remedy. As discussed earlier, however, a determination of whether the reasons for cancellation and the

---

[2]*Mississippi Auto Insurance Law and Practice* interprets Section 83-11-17 to require appeal to the commissioner within seven days. *See* DAVID D. O'DONNELL & S. DUKE GOZA, MISSISSIPPI AUTO INSURANCE LAW & PRACTICE § 2:3 (2008)("An insured wishing to appeal a wrongful non-renewal is required to mail or deliver a request for hearing to the insurance commissioner *within seven working days* from date of receipt of the notice of non-renewal.")(emphasis added).

notice of cancellation were valid is integral to the claims of bad faith and these determinations are expressly reserved to the Insurance Commissioner.

Further, the parties have put much work into the preparation of the bad faith case, including discovery and depositions. After the speedy resolution of the administrative hearing, either party has a statutory right to a *de novo* review in the chancery court. MISS CODE ANN. § 83-11-21 (1999). It is likely that the case will again require judicial review. Therefore, in the interest of judicial economy and efficiency, this case should be stayed pending the order of the commissioner.

## III. CONCLUSION

IT IS, THEREFORE, ORDERED AND ADJUDGED that this case is stayed pending administrative review by the Commissioner of Insurance.

It IS FURTHER ORDERED AND ADJUDGED that the parties shall advise the court of the outcome of its hearing within sixty (60) days of this Order for the entry of further and appropriate orders.

SO ORDERED AND ADJUDGED on this, the 13th day of October, 2009.

> *s/Keith Starrett*
> UNITED STATES DISTRICT JUDGE